UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THE TOPPS COMPANY, INC.,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Plaintiff,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:　　　99 Civ. 9437 (CSH)
　　　　　　　　- against -　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:　　　MEMORANDUM AND ORDER
　　　　　　　　　　　　　　　　　　　　　　　:
CADBURY STANI S.A.I.C. f/k/a　　　　　　　　:
PRODUCTOS STANI SOCIEDAD　　　　　　　:
ANONIMA INDUSTRIAL Y　　　　　　　　　　 :
COMMERCIAL,　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Defendant.　　　　　　　　:
------------------------------------------------------------x

HAIGHT, Senior District Judge:

　　　　Plaintiff The Topps Company, Inc. ("Topps") makes motions *in limine* with respect to the anticipated trial testimony of two expert witnesses retained by defendant Cadbury Stani S.A.I.C. ("Stani"): Douglas P. Fritz, an expert on liability issues, and Raymond Sims, an expert on damages issues. Counsel for Topps reviewed the written reports of these experts and took their depositions before making the present motions. Stani opposes both motions. This opinion resolves them.

**I. FRITZ**

　　　　Topps moves for an order precluding Fritz from testifying at trial, or in the alternative an order requiring him to answer certain questions he refused to answer at his deposition.

**A.　Motion to Preclude Trial Testimony**

　　　　Topps' motion to preclude Fritz from giving any testimony at trial is denied.

　　　　The trial of the liability issues in this case will turn largely upon expert testimony of a technical nature. Stani has retained Fritz as its expert witness. His qualifications to testify as an

1

expert pursuant to F.R.Evid. 702 are not questioned, nor could they be. It follows that precluding Stani from calling Fritz as a trial witness would be draconian in its impact. Fairness mandates that such a penalty not be imposed unless the circumstances compel the Court to do so. They do not. Topps' motion to preclude is based solely upon Fritz's refusal to answer certain questions at his deposition. To the extent that Fritz's refusals to respond were unjustified, there is sufficient time before trial to reopen the deposition and get his answers.

**B.        Alternative Motion to Compel Further Answers**

During his deposition by counsel for Topps, Fritz refused to answer a number of questions, principally upon the basis of "confidentiality." Those questions relate to (1) Fritz's possible bias as a trial witness; (2) the anticipated substance of the opinions to be offered at trial not by Fritz, but by Sims, Stani's expert on damages issues; and (3) the substance of Fritz's opinions on liability issues. I discuss those three categories in that order.

**1.        Bias**

Topps' motion to compel Fritz to answer further questions bearing on his potential bias as a witness is denied.

Topps has sufficient information at hand to permit meaningful cross-examination on Fritz's possible bias in favor of Stani that might color his fact or expert opinion testimony.[1] The answers Fritz gave at his deposition and subsequent affidavits executed by Fritz and Ryan P. Farley, an

---

[1] The submissions on this motion indicate that Topps intends to call Fritz as a fact witness (presumably "hostile" within the meaning of F.R.Evid. 611(c)) and Stani intends to call him as an expert.

attorney for Stani,[2] enable Topps to demonstrate at trial the following circumstances, arguably relevant to Fritz's bias as a witness:

Fritz, who left Topps' employ in 1979, now works as a consultant to Cafosa Gum, S.A. ("Cafosa"), a Spanish gum base manufacturer. Cafosa has done substantial amounts of business with Cadbury Schweppes plc, Stani's corporate parent, and its affiliates, including Stani. Counsel for Topps asked Fritz either to serve as an expert for Topps or to be deposed by Topps.[3] Whatever counsel's request was, Fritz declined because when Fritz asked Cafosa if he could be deposed by Topps, Caposa refused. Subsequently, however, Fritz agreed to serve as an expert for Stani. Fritz received permission to testify for Stani after a high-level contact on the subject between the managing directors of Cafosa and Cadbury Schweppes. Fritz performs consulting work under the name DP Fritz Consulting. In 2004 approximately 55% of that firm's revenues related to work Fritz performed for Cafosa.

Counsel for Topps would like to explore these subjects in further detail. However, in aid of counsel's effort to fashion a brick of bias on Fritz's part, the presently existing straws of the Cafosa-Cadbury Schweppes and Cafosa-Fritz relationships are entirely sufficient, particularly when viewed in the context of Fritz's change of mind about testifying in the case, apparently the result of a high-level approach by Stani's corporate parent to Cafosa, which does business with Cadbury Schweppes. Further details would only be cumulative and, given the material already available to Topps, their

---

[2] Stani submitted those affidavits in an unsuccessful attempt to persuade Topps to withdraw this motion. The factual assertions in the Ryan affidavit, executed by an attorney for Stani, constitute admissions of that party.

[3] An exchange at Fritz's subsequent deposition reveals counsel's recollection that he asked Fritz to be an expert and Fritz's recollection that counsel only asked to depose him. The difference is not material to the point at issue.

probative value would not justify the additional trial time required to place them before the jury. Accordingly these inquiries would not pass muster during cross-examination of Fritz at trial under the balancing analysis of F.R.Evid. 403, and I will not require that the additional questions on this subject be answered in any renewed deposition of him.

**2.     Opinions of Raymond Sims**

The second area of inquiry in which Topps complains of the adequacy of Fritz's answers at his deposition relates to "the substance of the opinion of Raymond Sims, Stani's damages expert." Moving affidavit of David G. Ebert, Esq., at ¶ 2.

Sims' expert report, certain pages of which appear as Ex. C to the Ebert affidavit, recites that it contains Sims' opinions "regarding the amount of economic harm that [Topps] purportedly suffered as a result of Stani's alleged breach of contract and misappropriation of Topps Technology," and sets forth his responses to the opinions expressed in the report of Topps' expert on the subject, Laura Boothman Stamm. Sims Report at 1. Having reviewed Stamm's report, Sims says "it appears that Topps is claiming that Stani's products use three broad categories of Topps' trade secrets: gum base, softener and flavor (flavor only as it relates to certain Bazooka products)." Sims continues that "[b]ased on conversations with Stani personnel and Stani's technical experts, I understand that there were alternatives available to Stani if it could not use the alleged Topps Technology." At his deposition, Sims stated that on the question of "whether there were alternatives available to Stani if it did not use the Topps technology" he had conversations with "primarily Kearns and Fritz, but also I think it's clear to say Stani people as well and I've read deposition testimony of a number of people." Dep. Tr. 146. Based on the understanding thus acquired, Sims reasons in his report that any added costs of utilizing an alternative "to the allegedly misappropriated technology would reflect

4

a cap on the portion of the profits that would be attributable to that technology," and would also "reflect the maximum royalty that Stani would be willing to pay Topps to use Topps Technology, since any greater royalty amount would cause Stani to switch to one of the alternatives." Report at 11. Sims further states in his report that : "I understand that the gum bases used by Stani in both Bazooka and Beldent are considered a commodity and could be replicated by and acquired from a variety of sources, including, for example, Cafosa." *Id*. Sims appends to his report a chart purporting to show the "Bazooka and Beldent Increase in Cost from Use of Alternate Gum Base and Flavor."

It would appear from the moving papers that Fritz's proposed expert opinion testimony and that of Raymond Sims are interrelated. Thus it is said that Fritz opines "that Stani did not use Topps Technology for its gum base formula, a core issue in this case," *id*., and that "[f]rom Stani's expert report, it appears that Stani intends to argue at trial that Stani could have ceased Topps' formulas and acquired gum bases from other sources, including Cafosa." *Id* at ¶ 9. If these summaries are accurate, Fritz is apparently prepared to say that Stani did not use Topps' formulas and gum bases, and Sims is prepared to say that this is plausible because Stani did not have to use them.

Topps argues on the present motion that these statements in Sims' report and testimony open the door for Topps to reopen Fritz's deposition for extended questioning about Cafosa's sales of gum base to Cadbury Schweppes and related matters. They do not, and I will not compel the additional questioning of Fritz in these areas. First, there is no reason to assume that Fritz, a consultant to Cafosa, has such detailed knowledge. Second, the primary sources of such information were readily available to Topps. Sims' report is undated, but counsel for Topps had a copy before taking Sims' deposition on April 14, 2004. If Topps wished to develop pre-trial evidence of Cafosa's gum base

sales, it had ample time to obtain it from Cafosa or Stani, after applying to the Court if necessary for an enlargement of the time for completion of discovery. Topps says that Cafosa is "in Spain" and the Stani witnesses had already been deposed. But facilities exist for the gathering of evidence in a foreign country, pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters or otherwise. As for the Stani witnesses, Topps could have asked for an order reopening discovery of Stani on the point at any time after receiving Sims' report and taking his deposition in April 2004. I will not reopen Fritz's deposition so that he may be questioned on this or related subjects.

Topps is clearly entitled to ask Fritz what he said to Sims during the conversation or conversations to which Sims referred in his deposition and upon which Sims apparently based his opinions, at least in part. However, according to the portions of transcripts submitted with the motion papers, counsel for Topps examined Fritz on two days, April 9, 2004 and May 11, 2004. By May 11, 2004 counsel had read Sims' report and conducted Sims' deposition. Counsel could have asked Fritz what he said to Sims at that time, but failed to do so. Were this the only point at issue, I would not require Stani to incur the expense of presenting Fritz for a reopened deposition on the question of what he said to Sims, a question counsel can put to Fritz during the trial. However, for the reasons stated in Part I.B.3., *infra*, Topps is entitled to reopen Fritz's deposition to obtain additional answers on one line of inquiry, and so I will allow counsel for Topps to put this particular question to Fritz as well.

**3.     Opinions of Douglas Fritz**

Two aspects of Fritz's previously expressed opinions are at issue here.

First, the question of whether Topps' technology (a term that includes its gum-making

formulas) was at the pertinent times and remains in the public domain is a core issue on liability. Thus Stani says in its brief in opposition to Topps' *in limine* motion with respect to Sims: "Topps itself had no technology that was not in the public domain other than the formula for the flavor for its Bazooka gum, a formula never given to Stani." Brief at 1. Stani asserts that proposition as a defense to Topps' claims.

Fritz is apparently prepared to testify for Stani that Topps' formulas are in the public domain. At Fritz's deposition Topps' counsel asked: "What is the basis for your opinion that this formula as with all Topps Technology has gone into the public domain? What was the basis for opining in that regard?" Fritz answered: "As a person who's been involved in formulating bubble gum and been in many factories around the world, I have seen formulas very similar or exactly like this in a number of different factories." "Where," counsel for Topps predictably inquired; and Fritz responded: "I can't discuss that. They're all privileged customers of Cafosa, but I can tell you that there is nothing special about these formulas." De. Tr. 161-162.

I cannot accept Fritz's claim on behalf of Cafosa of confidentiality or privilege. An expert witness cannot opine on a particular issue and then slam the door on cross-examination intended to explore the bases for the opinion. Fritz must appear for a further deposition at which he must give specific details with respect to his asserted sightings of formulas "very similar or exactly like [a Topps formula] in a number of different factories." If Fritz continues to refuse to answer, I will preclude him from expressing at trial an opinion that the Topps technology is in the public domain.

The second controversial aspect of Fritz's opinions relates to the sale by Caposa of gum base to other gum manufacturers. Fritz states in his report at page 7:

> I work very closely with Cafosa Gum, S.A., the world's largest gum

> base supplier, and Cafosa has sold significant quantities of gum bases to the world's largest gum manufacturers, including Wrigley, Adams Brands, Lotte, and Lifesaver (Hershey's) to mention a few. To criticize Stani for buying gum base from suppliers and to infer that this indicates that Stani was unable to independently develop gum base formulas, then presumably we must say the same of all of the above-mentioned companies.

At his deposition, Fritz declared his intention to testify at trial that "Cafosa sells to all the major gum producers." Dep. Tr. 227. (This proposition was stated in counsel's question and adopted by Fritz's affirmative response). Counsel pressed Fritz for the precise quantities of gum base Cafosa sold to each producer. Fritz refused to answer those questions, on the basis of confidentiality. However, Fritz did testify in his own words: "Let it be said that Cafosa has sold gum base to all of the gum manufacturers, all of the major gum manufacturers"; and he defined the phrase "significant quantities" in his report as "[a]nything over 100 tons." *Id*.

As the quoted passage from Fritz's report indicates, Topps is apparently proposing to offer proof that Stani bought gum base from other suppliers, and on that basis ask the jury to infer that Stani lacked the technical skill or capacity to develop gum base formulas on its own. That may represent an effort by Topps to counter Stani's defense that it "modified the processes and formulas Topps provided them to Stani's own particular circumstances," thereby making them "different processes and formulas from those provided by Topps." Brief on Sims motion at 1. In any event, Fritz's testimony that every major gum manufacturer bought gum base from suppliers is intended to defeat whatever inference Topps has in mind about Stani's commercial capabilities, arising from Stani's own purchases. Viewed through that prism, the answers counsel elicited from Fritz on this point are sufficient to establish the basis for Fritz's opinion, and I will not compel further answers. The phrase "over 100 tons" shows that Fritz had in mind significant commercial quantities, as

8

opposed to small samples for testing or experimentation. Exhaustive and time-consuming details with respect to each gum producer's purchase of gum base from Cafosa would not be of sufficient probative value to pass Rule 403 analysis. Topps must deal with Fritz's testimony on this point as best it can.

Stani is directed to make Fritz available, at its own expense, for a reopened deposition in New York on or before February 17, 2006, or on a later date stipulated by counsel. If counsel cannot agree upon the date for the deposition, the Court will set the date upon application by either party on notice. At the reopened deposition, counsel for Topps may ask the questions allowed by this opinion and appropriate follow-up questions, but no others.

## II. SIMS

One would think from reading Stani's brief in opposition to Topps' *in limine* motion addressing the damages expert Raymond Sims that Topps was asking the Court to preclude Sims' testimony entirely (as Topps did with respect to Fritz). However, Topps does not contend Sims should not be allowed to testify. Its contention is more narrow.

Specifically, Topps contends that Sims should not be allowed to testify, in accordance with his written report, that if Topps prevails on its claim of misappropriation of trade secrets, the resulting compensation to Topps "is best measured by a reasonable royalty for the use Stani made of Topps Technology." Report at page 7. Topps argues that the applicable measure of damages in a given case is for the Court, not the jury, and that Sims should be precluded from stating an opinion that the amount of Topps' compensation is "best measured" by a reasonable royalty.[4] Topps makes

---

[4] "Topps has no objection, of course, to Stani presenting through Sims whatever reasonable royalty damages calculations it wishes to present." Main Brief at 2.

9

the same point with respect to Sims' related opinion that the added costs to Stani of utilizing an alternative to the Topps technology "would reflect a cap on the portion of profits that would be attributable to that technology," *id*. at page 11, and also contends that Sims' use of the word "cap" could mislead the jury into believing, contrary to law, that a maximum exists on Stani's possible liability to disgorge profits.

Stani contends principally that this motion is premature and the Court should wait to consider what Sims can or cannot opine on damages issues until the proof on liability is in and Topps has survived a Fed.R.Civ.P. Rule 50(a)(1) motion for judgment as a matter of law on liability (which one senses Stani has in mind making).

In aid of its contention of prematurity, Stani quotes from this Court's opinion on Stani's prior motion for partial summary judgment: "New York law provides three methods of awarding damages for misappropriation of trade secrets: compensation for plaintiff's losses, an accounting of defendant's profits, or a reasonable royalty – and the appropriate measure of Topps' damages should be determined after full presentation of the facts in the event that Topps prevails at trial." 380 F.Supp.2d 250 (S.D.N.Y. 2005) at 268. It is quite right that I said that, but my statement in the context of a summary judgment motion does not preclude Topps from arguing *in limine* that part of the proposed opinion testimony of a defense expert witness is not admissible.

Stani wants to call Sims to have Sims opine that of the several methods available, Topps' right to compensation would be "best measured by a reasonable royalty." It is axiomatic that an expert witness cannot testify to an opinion if "his testimony would usurp the role of the trial judge in instructing the jury on the law." *Kidder, Peabody & Co., Incorporated v. IAG International Acceptance Group N.V.*, 14 F.Supp.2d 391, 404 (S.D.N.Y. 1998) (collecting Second Circuit cases).

Sims' opinion clearly crosses the line into that forbidden territory. In *United States ex rel. N. Maltese & Sons, Inc. v. Juno Construction Corp.*, 759 F.2d 253, 255 (2d Cir. 1985), the Second Circuit said: "Although the amount of recoverable damages is also a question of fact, the measure of damages upon which the factual computation is based is a question of law." (citations omitted). In *VermontMicrosystems, Inc. v. Autodesk, Inc.,* 138 F.3d 449, 452 (2d Cir. 1998), the court said: "Although calculation of the amount of damages is a factual determination, the formula used in making that calculation is a question of law." I read these Second Circuit cases to mean that the nouns "measure" and "formula" are synonymous in identifying questions of law. Accordingly Sims' proffered testimony that Topps' compensation would be "best measured" by a reasonable royalty impermissibly expresses an opinion on a question of law.

*Maltese* and *Vermont Microsystems* involved bench trials, and so did not deal directly with the proper provinces of a jury as fact finder and the trial judge as instructor on the law. However, on the question of these separate responsibilities there is no principled difference between a jury trial and a bench trial. In a bench trial the judge both finds the facts and declares the law, but if the judge applies an improper formula in calculating damages his error is one of law. *See Maltese*, 759 F.2d at 255-56 ("The district court, however, calculated Maltese's damages by off-setting the progress payments it received and the amounts which Juno paid to United and Gem. *This was an error of law*.") (emphasis added). *Se also Vermont Microsystems, Inc. v. Autodesk, Inc.* 88 F.3d 142, 152 (2d Cir. 1996) (bench trial) ("Because the district court used an improper standard" in awarding damages, "the award cannot stand.").

In *Linkco, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242, 2002 WL 1585551 (S.D.N.Y. July 16, 2002), a jury trial, Judge Scheindlin applied this principle to bar *in limine* the proffered opinion of

an expert witness "about how to properly apply the 'reasonable royalty' approach in calculating damages." 2002 WL 1585551, at *3. As does Topps in the case at bar, the plaintiff in *Linkco* claimed *inter alia* misappropriation of a trade secret. Judge Scheindlin noted that the expert's opinion "presumes that the Court will charge the reasonable royalty theory of damages in his report," thereby "anticipat[ing] the Court's instructions on matters of law," and giving "impermissible opinions on issues of law." *Id*. The *Linkco* case then went to trial. In a post-verdict opinion, 232 F.Supp.2d 182, 185 (S.D.N.Y. 2002), Judge Scheindlin said: "Both parties proposed competing jury instructions concerning the appropriate measure of damages for each claim. During the trial, I made an oral ruling as to the appropriate measure of damages in a trade secret case. I write now to fully set forth the reasoning supporting that decision." While the trial judge decided to apply the reasonable royalty measure of damages to plaintiff's claim, her reasons for doing so are not relevant to the present motion. What is relevant to the present motion are Judge Scheindlin's rulings, in the *in limine* motions and then at trial, that an expert witness could not testify to the jury that a reasonable royalty was the proper measure of the plaintiff's damages.[5]

I agree with those rulings because they were compelled by Second Circuit authority. I reach the same conclusion in this case. That conclusion also extends to the second aspect of Sims' opinion testimony Topps cites in it motion, and for the additional reason, with respect to that aspect, that the

---

[5] Topps did not cite the *Linkco* decisions in its main brief. In calling the Court's attention to that case, although it was adverse to their client's interests for the reasons stated in text, counsel for Stani acted in accordance with the ethical principles of the profession. The Court takes this opportunity to express its appreciation to counsel.

expert's reference to a "cap" on damages would be misleading and unfairly prejudicial to Topps.[6]

### III. CONCLUSION

For the foregoing reasons:

(1) Topps' motion *in limine* to preclude Stani's expert witness on liability, Douglas Fritz, from testifying at trial is denied.

(2) Topps' alternative motion to compel further deposition answers from Fritz is granted in part and denied in part.

(3) Topps' motion *in limine* to preclude certain opinion testimony by Stani's expert witness on damages, Raymond Sims, is granted.

It is SO ORDERED.

---

[6] There is no substance to Stani's suggestion that the Court's ruling on Topps' motion *in limine* about Sims' proposed testimony should be deferred until the trial and completion of Topps' proof on liability. Sims' inadmissible opinions are not curable by Topps' proof on liability or by anything else. While it is true that the selection of the proper measure or formula for Topps' damages will best be made at the completion of the evidence, that selection will be made, as pointed out in text, by the Court as a question of law. In *Linkco* Judge Scheindlin properly held *in limine* that the defendant's damages expert could not opine to the jury that a reasonable royalty was the proper measure of the plaintiff's damages. *See also Kidder, Peabody*, 14 F.Supp.2d at 404 (ruling *in limine*) ("I conclude that Second Circuit authority requires me to preclude Professor Miller's testimony, as set forth in his written report. The detailed reasoning contained in that report makes it unnecessary to defer this conclusion until his deposition has been taken or the trial has begun."). A decision *in limine* also has the advantage of clarifying for the parties the permissible and impermissible areas of expert opinion testimony and consequently will assist them in trial preparation.

Dated: New York, New York

      October 5, 2005

                                            CHARLES S. HAIGHT, JR.
                                            SENIOR UNITED STATES DISTRICT JUDGE