UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X

THE TOPPS COMPANY, INC.      :     99 Civ. 9437 (CSH)

          Plaintiff,     :     MEMORANDUM OPINION
                                           AND ORDER
    -against-           :

CADBURY STANI S.A.I.C. f/k/a    :
PRODUCTOS STANI SOCIEDAD
ANONIMA INDUSTRIAL Y       :
COMERCIAL,

                          :
          Defendant.
-------------------------------------------------- X

Haight, Senior United States District Judge:

      Defendant Stani has recently filed two separate but related motions.  The first motion is for

partial summary judgment pursuant to Fed.R.Civ.P. 56 which, if granted, would dismiss Plaintiff

Topps' first, second and third causes of action, as pleaded in the fourth amended complaint.   The

second motion, to become operative if the first motion is denied, is for an order pursuant to

Fed.R.Civ.P. 42(b) directing a separate trial on the question of liability on Plaintiff's first, second

and third causes of action.  If the first motion is granted, the second motion becomes moot.  A jury

trial is presently scheduled to begin on March 13, 2006, with a final pre-trial conference scheduled

for February 21.

      Service of Stani's motions upon Topps generated an exchange of correspondence between

counsel, marred by a distressing return to *ad hominem* attacks.[1]  Counsel for Topps, in a letter dated

---

[1] *See* Letter of Stani's counsel dated February 2, 2006; letter of Topps' counsel dated
Februsry 3, 2006; and letter of Stani's counsel dated February 6, 23006.

February 3, 2006, characterize these motions as "untimely and improper" and ask for an order "directing Stani to withdraw them." Counsel for Stani resist such an order and wish to press their motions, particularly the one for partial summary judgment.

Stani's counsel say the timing of the partial summary judgment is explained by two recent stipulations of fact and a contention Topps makes in its own recent *in limine* motion, presently pending. Topps characterizes Stani's motion as untimely because, it argues, the revelations perceived by Stani are not that recent and Stani could have made the motion at an earlier time. Assume that to be true; it is of no moment. Sound judicial administration of a case is more concerned with the husbanding of the parties' and the Court's resources than with niceties of timing, unless the timing of a particular motion or application would cause unfair prejudice to a party. In the case at bar, counsel for Stani have acted properly in making a motion for partial summary judgment at this time, and the Court will entertain it.

Topps' first and second causes of action are, respectively, for breach of contract and misappropriation of trade secrets. The third cause of action for injunctive relief is dependent upon Topps succeeding on one or another of the first two. Stani's brief in support of its motion says without contradiction that "Topps' claims for breach of contract and misappropriation of trade secrets are based entirely on the assertion that Stani's continued use of proprietary or specialized 'Topps Technology' after April 30, 1996 violated the parties' 1980 License Agreement." Brief at 1. Stani contends that "the plain, unambiguous terms of the parties' agreement *permit* the type of behavior about which Topps now complains." *Id*. at 3 (emphasis in original). Since neither party suggests that the 1980 Licence Agreement is ambiguous, Stani's argument continues, the proper interpretation of the contract is a question of law for the Court, which can and should be decided in

advance of trial.

Stani's brief argues principally that the 1980 License Agreement distinguished between Topps' trademarks and Topps' products on the one hand, and the "Topps Technology" as defined in the Agreement on the other.

**Trademarks and Products:** In clause 2 of the License Agreement, Topps granted Stani the "right and license" to use the Topps trademarks and market Topps products, in return for continuing royalty payments by Stani to Topps. Clause 6 provided that subject to the provisions of other clauses that need not be considered at this time, "the license granted in clause 2 of this Agreement shall expire on the 30th day of April, 1996." The parties have stipulated that "[t]he 1980 Agreement expired by its own terms on April 30, 1996." Stipulations of Agreed Upon Facts, ¶ I.D.4.

**Topps Technology:** Clause 7 of the License Agreement provided that "[i]n consideration of the execution of this Agreement, TOPPS shall [*inter alia*]: (a) continue supplying STANI with TOPPS Technology . . . " In construing the phrase "continue supplying," it is useful to note that the commercial relationship between Topps and Stani began with the initial licensing contract in 1957, and Topps had been supplying Stani with Topps Technology ever since. Unlike the license for trademarks and products granted to Stani by clause 2 of the 1980 License Agreement, which clause 7 explicitly provided would expire on April 30, 1996, the Agreement contained no provision for the *expiration* of Stani's right to continue using the Topps Technology previously supplied to it. The only reference in the 1980 License Agreement to a cessation of Stani's right to use previously supplied Topps Technology appeared in clause 25(b)(ii), which provided in pertinent part that:

> Upon the termination of this Agreement by TOPPS for any cause whatsoever, . . . (b) STANI will not: (ii) . . . have any further right to use any of the TOPPS Trademarks or the TOPPS Technology except

> for use in connection with selling and disposing of Licensed Products on hand . . .

Since, as noted *supra*, Topps has stipulated that it did not prematurely terminate the Agreement, which instead expired by its own terms on April 30, 1996, Stani contends that under the plain language of the 1980 License Agreement (which both parties have recently characterized as "unambiguous") Stani was entitled to continue using Topps Technology previously supplied to it by Topps. Stani arrives at this conclusion:

> Once the agreement ended, Stani could not continue to use Topps trademarks, which were only licensed and were not "supplied" to Stani under the contract. Stani could, however, continue to use so-called Topps Technology; the only differences would be that Stani would no longer receive any additional "technology" from Topps and Stani would be freed of paying further royalties to Topps for Topps' trademarks.

Brief at 18. Central to Stani's analysis is the contention that the 1980 License Agreement evidences the parties' intent to treat *expiration* and *termination* of the contract as different events with differing effects upon the parties' rights and obligations.

I have thus far considered only the brief submitted by Stani. Topps has not filed any opposing papers, instead expressing the preference (doomed to disappointment) that the motion be withdrawn. In that circumstance, it would be inappropriate to intimate any view as to how Stani's motion for partial summary judgment should be decided, and I do not do so. However, it is plain that this motion raises a substantial, not a frivolous, question, and is not interposed to delay the trial or for some other improper purpose. As for the timing of the motion, the relevant question is not whether Stani could have made it sooner; rather, it is whether it is the right course to decide the motion prior to the trial. Clearly that is the case. The motion turns upon a question of law. The

parties agree that the License Agreement is unambiguous, although they read it differently; neither side intends to offer extrinsic evidence as to its meaning. Even if one or the other party perceived an ambiguity, "[w]hether a writing is ambiguous is a question of law for the court," *Scholastic, Inc. v. Harris*, 259 F.3d 73, 82 (2d Cir. 2001) (citation omitted) (construing New York law),[2] and the court's function in construing an unambiguous contract is to "effectuate the intention of the parties as evidenced by the language they used," *id*. (citation omitted). Those judicial functions can and should be undertaken in advance of trial. Stani is correct in arguing that the same contentions underlying its motion for partial summary judgment could be made at the end of Topps' case in chief, in the form of a motion for judgment as a matter of law under Fed.R.Civ.P. 50(a)(1), but it is far better for counsel and Court to consider such questions in the relatively unhurried setting of a pretrial motion, rather than in the middle of a trial, with jurors sitting in their jury room wondering, perhaps irritably, what the delay is all about.

Stani also appears to be correct in stating that its motion, if well founded and granted, would save an enormous amount of trial time. Stani's counsel say in their February 2, 2006 letter at 2 that if Topps' first, second and third causes of action are dismissed, "only one claim will remain for trial – Topps' claim that Stani fraudulently induced Topps to enter into the 1985 Addendum eliminating Stani's Beldent products from the 1980 License Agreement," a claim reduced to one for damages "for the relatively short period from when the royalties for Beldent stopped being paid to Topps – approximately 1987 to April 30, 1996." Topps' first three causes of action all depend upon the meaning of the 1980 License Agreement. If the Court accepts Topps' construction of that contract

---

[2] Clause 31 of the 1980 License Agreement provides that New York law governs the contract.

5

and denies Stani's motion, the claims will then turn upon a number of factual issues – *e.g.*, did Topps proprietary technology exist, or was it a matter of public knowledge? did Stani misappropriate any protected Topps technology, and if so, what, when, and with what consequent economic loss? – that would require for their resolution by the jury the highly technical testimony of squads of witnesses, fact and expert, and the introduction of documents in English and Spanish numbering, according to Topps' pretrial calculations, in excess of 1,000. While I do not doubt that the Court and a jury would be equal to the challenges of a full plenary trial, it is manifestly preferable to resolve judicially the legal viability of the first three causes of action before embarking on a trial.

That is particularly so when one adds to the calculus the procedural vehicles available for placing the question before the Court of Appeals for decision in advance of a trial. If this Court grants Stani's motion and dismisses the first three causes of action, Fed.R.Civ.P. 54(b) would allow for the entry of a final judgment in Stani's favor on those claims upon this Court's "express determination that there is no just reason for delay and upon an express direction for the entry of judgment." If this Court denies Stani's motion but is of the opinion that the order denying the motion "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," the Court may certify the order for interlocutory appeal under 28 U.S.C. § 1292(b).

One must of course recognize that neither of these two procedural paths guarantees pretrial appellate review. The Court of Appeals may vacate a Rule 54(b) final judgment as insufficiently justified or improvidently made, or decline to accept a § 1292(b) certification. As for Rule 54(b), the Second Circuit has made it plain that it is not sufficient for a district court to simply parrot the

6

wording of the Rule; "[r]ather, its certification must be accompanied by a reasoned, even if brief, explanation of its conclusion." *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 41 (2d Cir. 2003) (citations omitted). While *O'Bert* refers to the "historic federal policy against piecemeal appeals," a policy requiring "that the district court's power to enter a final judgment before a case is concluded, in order to permit an aggrieved party to take an immediate appeal, be exercised sparingly," the Second Circuit went on to say that "[s]ince the Rule 54(b) certification is reviewable for abuse of discretion, to justify reversal, [the] district court's determination must be clearly unreasonable." *Id*. (citations and internal quotation marks omitted). The Second Circuit has also held with respect to Rule 54(b) that "[c]laims are normally treated as separable within the Rule if they involve at least some different questions of fact and law and could be separately enforced." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 21 (2d Cir. 1997). That test resonates in the case at bar because Topps' first three causes of action arise out of and are dependent upon the 1980 License Agreement, while its fourth and fifth causes of action arise out of and are dependent upon the 1985 "Amendment to Amended and Restated License Agreement," referred to in prior opinions in the case as "the 1985 Amendment." *See* 380 F.Supp.2d 250 at 253.[3] These are entirely separate contracts and the factual issues involved contain no meaningful overlap. Topps' first three causes of action arise out of Stani's alleged misconduct in breach of and during the life of the 1980 License Agreement; the fourth and fifth causes of action arise out of Arnoldo Stanislavsky's alleged fraud in inducing Topps to agree to the 1985 Amendment. In consequence, an order dismissing the first three causes of action might justify this Court's direction of a final

---

[3] That opinion, familiarity with which is assumed, sets forth the factual background of the case in detail.

7

judgment on those claims under Rule 54(b); the same considerations might argue in favor of a § 1292(b) certification for interlocutory appeal if Stani's motion for partial summary judgment is denied.

I refer to these procedural vehicles only in terms of possibilities, since they are mentioned for the first time in this opinion, and counsel have not had an opportunity to consider them. However, it is apparent that the most efficient resolution of this important but not acutely time-urgent commercial case would be achieved by pretrial determinations by this Court and the Court of Appeals of the viability of Topps' first three causes of action; and the possibility of such a resolution is inherent in the nature of the case.

In these circumstances, the Court makes the following Order:

1. Topps' application for an order directing Stani to withdraw its motions for partial summary judgment under Rule 56, and alternatively for bifurcation of the trial under Rule 42(b), is denied.

2. The Court will consider Stani's motion for partial summary judgment on its merits at this time.

3. Stani's motion for a bifurcated trial will be held in abeyance pending decision on the motion for partial summary judgment.

4. Topps is directed to file and serve papers opposing Stani's motion for partial summary judgment on or before February 24, 2006.

5. Stani may file and serve reply papers, if so advised, on or before March 10, 2006.

6. The Court will hear oral argument on the motion on March 15, 2006 at 10:30 a.m. in Room 17C, 500 Pearl Street.

7. The pretrial conference scheduled for February 21, 2006 is cancelled.

8. The trial is adjourned from March 13, 2006 *sine die*, with a new trial date to be set by the

Court following such further orders, decisions, and developments as may be handed down or occur

in the future.

9. All *in limine* motions are stayed pending the Court's further order.

It is SO ORDERED.

Dated: New York, New York
        February 9, 2006

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

9